IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


Lester Lambert,                                    :


                        Plaintiff          :        Civil Action 2:08-cv-00753

           v.                              :        Judge Graham

Michael J. Astrue, Commissioner
of Social Security,                        :        Magistrate Judge Abel

                        Defendant

                                           :

**ORDER**

This matter is before the Court on plaintiff Lester Lambert's June 8, 2009

objections to Magistrate Judge Abel's June 1, 2009 Report and Recommendation.  The

Court, having reviewed the record *de novo*, determines that there is substantial evidence

supporting the administrative law judge's determination that plaintiff Lester Lambert is

not disabled within the meaning of the Act.  The Court further finds for the reasons set

out below that plaintiff's objections to the Report and Recommendation are without

merit.

Plaintiff Lester Lambert alleges that he became disabled on November 1, 1999, at

age 43, by seizures, back pain, migraines, high blood pressure, schizophrenia, and his

right elbow. The administrative law judge found that Lambert is capable of performing

a reduced range of light work activity.

This is an appeal of Lambert's second application for disability insurance benefits. In denying an earlier application on August 12, 2004, the administrative law judge held that Lambert was capable of performing a reduced range of light work. Plaintiff argues that the decision of the Commissioner denying his second application for disability benefits should be reversed because the Commissioner erred when he unreasonably applied *Drummond v. Commissioner*, 126 F.3d 837 (6th Cir. 1997) to concluded that there was no new and material evidence to warrant extensive deviation form limited light residual functional capacity determined by the previous administrative law judge.

Plaintiff argues that although the administrative law judge noted that there was new medical evidence, the administrative law judge failed to analyze the evidence to determine whether plaintiff's condition worsened since the prior decision. According to plaintiff, the administrative law judge failed to note any evidence of cervical impairment despite evidence of moderately severe anterior and posterior spurring at C3-4, C405, C506 and to a lesser extent C6-7. The administrative law judge also failed to note evidence of neuropathy in the left upper extremity, moderate neuropathy at the ankle and mild left L5 radiculopathy. Plaintiff also points to a November 16, 2007 MRI which revealed multiple levels of concentric annulus disc bulging and prominent degenerative disc disease at L5-S1 with moderate concentric annulus bulging and small central focal disc bulge component with significant altered marrow signal changes at L5-S1.

Plaintiff maintains that the Magistrate Judge pointed to portions of the administrative law judge's decision which purport to consider the new evidence, but the administrative law judge indicates that he is relying upon the opinions of two reviewing medical consultants from the BDD. Plaintiff argues that these medical consultants did not have the new evidence before them when they assessed plaintiff's residual functional capacity.

The Magistrate Judge quoted extensively from the administrative law judge's decision:

The claimant has had longstanding complaints of back and shoulder pain, with few specific objective medical findings. In December 2004, an x-ray of the lumbar spine showed some degenerative changes, and the claimant was given a diagnosis of lumbar strain (Exhibit C-9F). He had a normal x-ray of the left shoulder, although a shoulder strain was also diagnosed. While under the care of Dr. Murray, his most prevalent subjective complaints probably were of back and shoulder pain for which he was provided narcotic medication such as Vicodin (Exhibits C-15F and C-18F). Strength and neurological functions were intact. The claimant continued to request Vicodin while in prison in 2006, and he threatened to refuse other kinds of medication. (Exhibit C-19F). A November 2006 x-ray of the cervical spine showed moderate degenerative changes with spurring (Exhibit C-19F). In April 2007, an EMG did show a mild L5 radiculopathy (Exhibit C-21F)[sic] . The objective findings are mild, but based on the chronic nature of his pain complaints and his longstanding reliance on narcotic pain medication, his back and shoulder conditions shall be considered "severe."
. . .
The claimant's back impairment is associated with evidence of just generalized degenerative change in the lumbar spine with mild radiculopathy, and moderate spurs in the cervical spine, while physical exams show that he retains normal strength and gait with no focal neurological deficits (Exhibits C-9F, C-12F, C-15F, C-17F, and C-19F). He may have some loss of motion in his shoulder, but significant weakness or neurological compromise is not demonstrated. The requirements of

section 1.02 and 1.04, pertaining to spinal disorders and joint disease, are not shown to be met or equaled.

(R. 25-26.) While it is true that the reviewing medical consultants did not have the benefit of reviewing the new evidence, the administrative law judge explicitly considered the new medical evidence that was not available at the time of the August 12, 2004 decision:

> It is true that the claimant has had chronic complaints of back and shoulder pain, but the underlying objective findings indicate just mild degenerative or arthritic changes, and his subjective complaints likely have been influenced to some degree by his craving for narcotic medication such as Vicodin (See Exhibit C-19F). He retains essentially normal strength, gait, and neurological functions despite a mild lumbar radiculopathy noted on an EMG (Exhibits C-15F, C-18F, C-19F, and C-20F). . . . He is not expected to stoop more than occasionally, allowing for perhaps some loss of flexibility. He is permitted to alternate sitting and standing periodically to relieve any buildup of discomfort. Noting his history of shoulder complaints, he is not required to work above shoulder level on his left side.

(R. 30.)  Consequently, the Magistrate Judge properly concluded that:

> [t]he administrative law judge accounted for the findings in the November 2007 MRIs of his left shoulder and lumbar spine by restricting him from working above the shoulder level on his left side and  accounting for the loss of flexibility in his lower back. The MRI of his lumbar spine revealed multiple levels of concentric annulus disc bulging and prominent degenerative disc disease at L5-S1 with moderate concentric annulus bulging and a small central focal disc bulge component with significant altered marrow signal changes at this level. No acute vertebral collapse was seen. (R. 1041.) The MRI of his shoulder showed no evidence of a complete tear or retraction, and no gross bursal effusion. (R. 1042.)  Dr. Murray diagnosed a rotator cuff strain. There was no tear or effusion. *Id.* The administrative law judge formulated a residual functional capacity that accommodated these limitations.

Doc. 17 at 15-16.

4

Upon *de novo* review in accordance with the provisions of 28 U.S.C. §636(b)(1)(B), the Court **ADOPTS** the Report and Recommendation.  Plaintiff's motion for summary judgment is **DENIED.**  Defendant's motion for summary judgment is **GRANTED.**  The decision of the Commissioner is **AFFIRMED.**  The Clerk of Court is **DIRECTED** to enter **JUDGMENT** for defendant.  This action is hereby **DISMISSED.**

**It is so ORDERED.**

s/ James L. Graham
JAMES L. GRAHAM
United States District Judge

**DATE**: August 12, 2009